Signed: October 18, 2005

_____
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>JOHANNA P. WELTY,<br>　　　　Debtor.<br>_____/ | No. 04-41166 TD<br>Chapter 7 |
| FRANK A. WELTY, III,<br>　　　　Plaintiff,<br>　　vs.<br>JOHANNA P. WELTY,<br>　　　　Defendant.<br>_____/ | A.P. No. 04-4175 AT |

**MEMORANDUM OF DECISION**

　　In the above-captioned adversary proceeding, Plaintiff Frank A. Welty, III ("Welty") seeks a judgment against Defendant Johanna P. Welty (the "Debtor"), his former spouse, denying her chapter 7 discharge under 11 U.S.C. § 727(a)(2)(A) and/or excepting certain claims from her chapter 7 discharge under 11 U.S.C. § 523(a)(4) or (6). Trial of the adversary proceeding took place on August 10,

2005. For the reasons stated below, the Court rules for the Debtor on all three claims.

## SUMMARY OF FACTS

During their marriage, the Debtor and Welty owned real property in Alamo, California (the "Real Property"). The Real Property had several rental units which were occupied by tenants paying rent (the "Rents"). In addition, Welty had a series of investment accounts in her sole name (the "Fidelity Accounts").

Welty filed a dissolution petition against the Debtor in 2000. Their marital relationship was severed in May 2002. Their property disputes had been partially resolved by March 2004 when the Debtor filed her chapter 7 bankruptcy petition. Among other things, the family law judge, Judge Leslie Morgan ("Judge Morgan"), had determined that the Real Property and the Fidelity Accounts were community property.

The Debtor was permitted to remain in residence on the Real Property during the dissolution proceeding. She was authorized to collect the Rents but was required to use them to pay the expenses of the Real Property. She was not awarded any spousal support. The Real Property was marketed for sale, and several offers were received prior to the commencement of the bankruptcy case. However, none of the sales was consummated by the time the bankruptcy was filed.

The Rents were less than the Real Property expenses. From 2000 through the Fall of 2003, Welty used the funds in the Fidelity Accounts to make up the shortfall. She also used them to

2

pay some of her living expenses and the living expenses of her and Welty's adult daughter, Antonia ("Tia").

After the Debtor filed her chapter 7 bankruptcy petition, Welty filed a timely adversary proceeding seeking denial of the Debtor's discharge under 11 U.S.C. § 727(a)(2)(A) and seeking to except certain claims against the Debtor under 11 U.S.C. § 523(a)(4) and (6).[1] His claim for denial of the discharge under § 727(a)(2)(A) was based on the Debtor's pre-petition transfer of one-half of her interest in the Real Property to Tia. His claim under 11 U.S.C. § 523(a)(4) alleged that the Debtor had embezzled his share of the Fidelity Accounts and his share of the Rents used to pay her and Tia's living expenses rather than the Real Property expenses (the "Rent Claim"). His claim under 11 U.S.C. § 523(a)(6) alleged that the Debtor had converted his share of the Fidelity Accounts and that this conversion constituted a willful and malicious injury to his property (the "Fidelity Account Claim").[2]

---

[1] The complaint also alleged a claim for denial of the Debtor's discharge under 11 U.S.C. § 727(a)(4)(A), alleging that the Debtor lied under oath at the 11 U.S.C. § 341 meeting. However, Welty failed to present admissible evidence of the Debtor's testimony at that meeting, and the claim was deemed abandoned.

[2] The complaint also alleged a nondischargeable claim for willful and malicious injury based on the Debtor's alleged refusal to permit Welty to remove his share of the furniture and furnishings from the Real Property. However, no evidence in support of this claim was presented at the trial. Thus, the Court deemed the claim abandoned.

3

**APPLICABLE LAW**

Section 727(a)(2)(A) of the Bankruptcy Code provides that an individual chapter 7 debtor's may be denied a discharge if:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor...has transferred...-- (A) property of the debtor, within one year before the date of the filing of the petition;....

A claim under 11 U.S.C. § 727(a)(2)(A) has two elements: "1) a disposition of property, such as transfer or concealment, and 2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property." In re Lawson, 122 F.3d 1237, 1240 (9th Cir. 1997).

Section 523(a)(4) of the Bankruptcy Code excepts from a individual chapter 7 debtor's discharge a debt "for...embezzlement...." Embezzlement, for purposes of 11 U.S.C. § 523(a)(4), has been defined as "'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" In re Littleton, 942 F.2d 551, 555 (9th Cir. 1991)(quoting Moore v. United States, 160 U.S. 268, 260 (1885)). Based on this definition, the Littleton court observed that a claim for embezzlement has three elements: "(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than [that for] which [it] was entrusted, and (3) circumstances indicating fraud." Id.

Under California law, conversion is defined as "'the wrongful exercise of dominion over the personal property of another.'

4

[Citation omitted.]" The act constituting conversion must be intentional; wrongful intent is not required. In re Peklar, 260 F.3d 1035, 1037 (9th Cir. 2001). However, not all acts constituting conversion under California law give rise to nondischargeable claims under 11 U.S.C. § 523(a)(6).

Section 523(a)(6) of the Bankruptcy Code excepts from the debtor's discharge a claim "for willful and malicious injury by the debtor to another entity or to the property of another entity." In Kawaauhau v. Geiger, 523 U.S. 57 (1998), the Supreme Court held that the word "willful" in 11 U.S.C. § 523(a)(6) modifies the word "injury." Thus, for a claim to be nondischargeable under § 523(a)(6), the debtor must have intended to injure another entity or to injure the property of another entity. In re Peklar, 260 F.3d at 1038.

Whether the debtor acted willfully for purposes of § 523(a)(6) is governed by a subjective standard. In re Jercich, 238 F.3d 1202, 1208 (9th Cir.) *cert. denied* 533 U.S. 930 (2001). The Court must find either that the debtor intended the injury or was substantially certain that the injury would occur. Id.; see also In re Su, 290 F.3d 1140, 1144-46 (9th Cir. 2002). As a separate element, the Court must also determine that the act was malicious. Malice requires: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause and excuse." Jercich, 238 F.3d at 1209.

The plaintiff has the burden of proof on claims under both 11 U.S.C. § 727 and §523. The standard of proof is by the

5

preponderance of the evidence.  In re Scott, 172 F.3d 959, 966 (7th Cir. 1999)(claim under 11 U.S.C. § 727);  Grogan v. Garner, 498 U.S. 279, 286-87 (1991)(claim under 11 U.S.C. § 523).

**DISCUSSION**

**A.   OBJECTION TO DISCHARGE CLAIM**

The complaint alleged that the Debtor's discharge should be denied because, approximately nine months before she filed her bankruptcy petition, she transferred one-half of her interest in the Real Property to Tia.  It alleged that the transfer was made with actual intent to hinder, delay, or defraud Welty's interests as a creditor.  See 11 U.S.C. § 727(a)(2)(A).  The Court began the trial by hearing evidence and argument on this claim.  It reasoned that, if this claim were granted, there would be no need to try the dischargeability claims.

Welty testified that the family court had ordered the Real Property sold.  He testified that several offers were made to purchase the Real Property but that the Debtor interfered with them and caused them to fail.  He asserted that the Debtor's transfer of one-half of her interest in the Real Property to Tia was designed to thwart one of these sales and that it succeeded in doing so.

The Debtor's testimony conflicted with Welty.  She testified that she transferred one-half of her interest in the Real Property to Tia to "empower" her, not to prevent the Real Property from being sold.  She testified that Tia's interest in the Real Property would not have impeded the sale because Tia would have

6

signed off on any sale documents. She testified that she disclosed Tia's interest in the Real Property to the buyers. The Debtor also testified that she had no intent to hinder, delay, or defraud Welty's interests as her creditor because she did not think of him as her creditor.

As stated at the conclusion of the evidence and argument on this issue, the Court finds and concludes in favor of the Debtor on this issue. Welty had the burden of proof and failed to carry it. The principal evidence causing the Court to reach this conclusion was the undisputed fact that the Debtor had produced at least one of the offers to purchase the Real Property. This was inconsistent with Welty's theory that the Debtor was trying to prevent a sale.

**B. EXCEPTION TO DISCHARGE CLAIMS**

Given the Court's conclusion on the objection to discharge claim, the Court proceeded to try the dischargeability claims. The Court's findings and conclusions as to each of these claims is set forth below.

**1. Rent Claim**

As noted above, the complaint alleged that the Debtor's use of Welty's share of the Rents for purposes other than to pay the Real Property expenses constituted embezzlement, giving rise to a nondischargeable claim under 11 U.S.C. § 523(a)(4). The elements of a claim for embezzlement are: (1) property rightfully in the possession of a nonowner, (2) the nonowner's appropriation of the

7

property to a use other than that for which it was intended, and (3) circumstances involving fraud.  <u>Littleton</u>, 942 F.2d at 555.

The Court concludes that the Rent Claim does not qualify as an embezzlement.  Welty is unable to establish the first element of the claim: i.e., that the Rents were in the possession of a nonowner.  As stated above, Judge Morgan determined that the Real Property was community property.  It follows that the Rents, as proceeds of the Real Property, were also community property.  Although, as discussed below, an order issued by Judge Morgan on March 15, 2003 after several days of trial in December 2002 (the "March 15 Order") created a separate property interest in the Real Property in favor of Welty, it did not divide the Rents.  Thus, the Rents remained community property.  Although the Debtor was rightfully in possession of the Rents, she was not a nonowner of them as required by an embezzlement claim.

Welty did establish the second element of an embezzlement claim.  The Debtor admitted that, to some extent, the Rents were used for a purpose other than that for which they were intended.  The Rents were less than the Real Property expenses.  Thus, for most of the period during which the Debtor was collecting them, this element was not satisfied.  However, the Debtor admitted that she stopped making the mortgage payment in November 2003 because she no longer had sufficient funds to make a complete payment and the lenders would not accept a partial payment.  She did not testify that she stopped collecting and using the Rents.  However, the amount of the Rents collected and used for a purpose other

8

than that for which they were intended was not established. It was Welty's burden to present sufficient evidence to establish this amount.

In addition, Welty did not meet his burden of proof by establishing circumstances indicating fraud. The Debtor testified that both Welty and Judge Morgan knew she was using the Rents to pay her living expenses at this time. She testified that she was required to file reports with Judge Morgan monthly stating her income and expenses, including the source of the income. She testified that she had repeatedly asked for an award of spousal support on the ground that she had insufficient income from other sources at that time to pay her living expenses. She testified that she expected there to be a reckoning concerning the uses of the community property through the division of the Real Property sale proceeds.

Based on the foregoing, the Court is unable to find by a preponderance of the evidence that the Debtor's use of the Rents from November 2003 until March 2004, when she filed her bankruptcy petition, was fraudulent. Thus, Welty has failed to establish the first and third elements of a claim for embezzlement in connection with the Rent Claim.

**b. Fidelity Accounts Claim**

The complaint also alleged that the Debtor's use of Welty's share of the Fidelity Accounts constituted embezzlement, giving rise to a nondischargeable claim under 11 U.S.C. § 523(a)(4) and conversion qualifying as a willful and malicious injury, giving

9

rise to a nondischargeable claim under 11 U.S.C. § 523(a)(6). As stated above, the elements of a claim for embezzlement are (1) property rightfully in the possession of a nonowner, (2) the nonowner's appropriation of the property to a use other than that for which it was intended, and (3) circumstances involving fraud. Littleton, 942 F.2d at 555.

The elements of a claim for conversion under state law are "the wrongful exercise of dominion over the personal property of another. [Citation omitted.]" Peklar, 260 F.3d at 1037. In addition, to establish as a claim for conversion as a willful and malicious injury, the creditor must prove that the conversion was "willful": i.e., that the debtor intended to injure the creditor or his property or was substantially certain that injury would occur. Jercich, 238 F.3d at 1208.; Su, 290 F.3d at 1144-46. The creditor must also prove that the debtor acted with "malice": i.e., committed a wrongful act, intentionally, which necessarily causes injury, without just cause and excuse. Jercich, 238 F.3d at 1209.

The first element of a claim for embezzlement and a state law conversion claim are essentially the same: i.e., the property used wrongfully by the Debtor must belong to someone else. In determining whether Welty has satisfied this element, the Court divides Welty's claim into two time periods. This first time period relates to the Debtor's use of the funds from the end of February 2000 through March 15, 2003. February 27, 2000 was determined to be the date of the Debtor's and Welty's legal

10

separation. On March 15, 2003, Judge Morgan issued an order dividing the Fidelity Accounts. Thus, during this period, the Fidelity Accounts were community property. The second time period relates to her use of the funds thereafter until they were exhausted, in November 2003. During this period, the Debtor and Welty owned the remaining contents of the Fidelity Accounts in equal parts as their separate property.

According to account statements presented by Welty at the bankruptcy court trial, at the end of February 2000, there were five Fidelity Accounts containing stock or money market with a total value of $98,672.78: i.e., Accounts ## 1230, 3617, 4394, 5851, and 6413. According to the account statements, on or about March 15, 2003, the four accounts still in existence had a balance of approximately $23,000. Thus, between the end of February 2000 and March 15, 2003, the Debtor consumed approximately $75,000 of the funds in the accounts.[3] In the March 15 Order, Judge Morgan divided the contents of these four accounts: i.e., Accounts ##

---

[3] Judge Morgan clearly knew about the Debtor's withdrawal of some of these funds. In the March 15 Order, he charged the Debtor with receiving (1) $23,354 from Account # 4394 and (2) $16,000 from the sale of certain stock and $685 in funds held in Account # 1230. After a further hearing, in a subsequent order (the "April 19 Order"), Judge Morgan charged the Debtor with having received an additional $23,708.29 in funds held in Account #1230. Judge Morgan ordered these amounts reimbursed from the sale proceeds of the Real Property. In another proceeding, the Court has ruled that these rulings gave Welty a separate property interest in the Real Property.

11

3617, 4394, 5851, and 6413.[4] However, until he did so, the accounts and their contents constituted community property. As a consequence, the Debtor's use of the funds could not qualify as either an embezzlement or conversion.[5]

Once the accounts were divided, however, the Debtor did not own fifty percent of the remaining Fidelity Accounts. As noted above, at that time, the accounts contained approximately $23,000. Half of this amount, or approximately $11,500, belonged to Welty. She was never expressly authorized to spend Welty's share of the remaining funds. Thus, Welty established the first two element of an embezzlement claim in this amount: i.e., (1) property rightfully in the possession of a nonowner and (2) the nonowner's appropriation of the property to a use other than that for which it was intended. Littleton, 942 F.2d at 555. He also established a state law claim for conversion: i.e., "the wrongful exercise of dominion over the personal property of another." Peklar, 260 F.3d at 1037.

---

[4] Account # 1230 had apparently been closed by that time, all the funds having been withdrawn and spent by the Debtor.

[5] Welty asserted that, under California law, during a dissolution proceeding, each spouse is enjoined from transferring or consuming any commmunity property assets and that the Debtor's consumption of the contents of the Fidelity Accounts before March 15 Order was issued violated this injunction. This assertion might support a claim of nondischargeability on some other legal basis than those asserted by Welty, who was acting pro se by the time of the trial. However, the Court is unable to act as Welty's advocate in this proceeding by supplying alternative legal theories to support his claim.

12

However, in order to obtain a nondischargeable judgment on embezzlement grounds with respect to this amount, Welty must also establish circumstances indicating fraud. In order to obtain a nondischargeable judgment on grounds of conversion qualifying as a willful and malicious injury, Welty must also establish that the Debtor subjectively intended to injure him or his property and that she acted with "malice," as defined above. The Court concludes that Welty has failed to meet his burden of proof on these remaining elements of each claim.

The Debtor testified that she had no choice but to use these funds for her living expenses since she had no other source of income. For a portion of the period in question, presumably, she used some of the funds withdrawn to pay the Real Property expenses. The Debtor testified that she did not intend to injure Welty by using the contents of the Fidelity Accounts because she always assumed an adjustment would be made in the distribution of the Real Property sale proceeds. Given Judge Morgan's rulings in the March 15 Order, it was reasonable for her to make this assumption. Moreover, as the Debtor's counsel pointed out in closing argument, by at least December 2002, Judge Morgan and Welty knew that the Debtor had been depleting the Fidelity Accounts. Yet, no order was issued prohibiting the further withdrawal of their contents. Under these circumstances, the Court is unable to find that the circumstances indicated fraud or that the Debtor had the subjective intent to injure Welty or his property or had the subjective knowledge that he or his property

13

would be injured.  As a result, the Fidelity Accounts Claim also fails.

## CONCLUSION

Welty failed to carry his burden of proving that the Debtor's discharge should be denied under 11 U.S.C. § 727(a)(2)(A).  He also failed to carry his burden of proving that the Rent Claim constituted an embezzlement entitled to be excepted from the Debtor's discharge under 11 U.S.C. § 523(a)(4).  Finally, Welty failed to carry his burden of proving that the Fidelity Accounts Claim constituted either an embezzlement under 11 U.S.C. § 523(a)(4) or a conversion qualifying as a willful and malicious injury under 11 U.S.C. § 523(a)(6).  Counsel for the Debtor is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

```
                         COURT SERVICE LIST

   Frank A. Welty, III
   133 W. Ramshorn St.
   Dubois, WY 82513-0277

   Malcolm Leader-Picone
   Bartlett & Leader-Picone, LLP
   2201 Broadway, Ste. 803
   Oakland, CA 94612
```